MARIA A. HARTLEY, respondent,

*v.*

FRED A. HARTLEY, appellant.

[Decided May 4th, 1923.]

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Foster, who filed the following opinion:

"This is a suit for separate maintenance under the statute. The parties were married in February, 1917, and were then, and have continued to be, residents of this state. At the time of the marriage defendant was a widower, about forty years old, with two sons, and complainant was then about twenty-three years old; he was a Protestant and she a Catholic. Complainant's family had lived for some time in the same apartment-house with defendant, and after the marriage, which was kept secret, complainant continued to live with her family, and she and her husband did not live together until May or June of the same year, when complainant took up her residence in defendant's apartment with him and his two children. Defendant was engaged in peddling fish and produce, and this work was distasteful to complainant.

"It was agreed that the children of the marriage should be brought up in the Catholic faith, and she claims he later repudiated this agreement.

"Shortly after they began to live together, defendant began to receive what the parties called 'Black Hand' letters. The apparent purpose of these letters was to have defendant secure a divorce from complainant; and complainant's proofs

show that about this time, in May or June, 1917, defendant suggested that an actual or a mock divorce be secured, as a solution of the mystery of these letters, and that this suggestion was rejected by complainant.

"About Labor Day, 1917, defendant, while at Asbury Park, cursed complainant and struck her with a fan and accused her of being unfaithful, and on their return home defendant ordered her from her home and told her to go and live with her mother, which she did, until the following November 19th, and during this time she received no support from him. On the latter date complainant returned to her husband's home and remained there until June, 1918. During this period defendant left her alone frequently and did not provide her with either suitable or sufficient food, or with a satisfactory supply of heat. And he spent Thanksgiving and Christmas days away from her. The parties separated for the second time in June, 1918, and this separation continued until the following August, when complainant returned to live with defendant on his promise to treat her with greater consideration, and to give her a weekly allowance of $20 for supplies for the home, and this promise was kept until July, 1919, when complainant went to her mother's home to be confined.

"In August, 1918, after defendant induced complainant to return and live with him, he organized a corporation known as the F. A. Hartley Realty Company, and to this corporation. he and his wife conveyed all the real estate owned by him, estimated to be worth $19,500. At the time complainant joined in these conveyances, defendant gave her $1,000 to buy a fur coat, but complainant claims that she has since discovered that this payment was made her to induce her to release her dower and enable the defendant to dispose of these several properties, as he has since done, with the exception of one of them, without consulting her.

"For some months after the reconciliation, in August, 1918, the parties lived together harmoniously and until defendant had effected the sale, through the corporation, of all the real estate, except one parcel, on which was placed a

mortgage for $8,000. Thereafter defendant returned to his old course of treating complainant with neglect and failed to properly support her.

"There is also some proof supporting complainant's contention that defendant objected to having any children. On August 14th, 1919, a child was born of the marriage, and in September complainant returned to her husband's home, where she continued to live until January 15th, 1920, when they finally separated.

"From September, 1919, to January, 1920, the proof is convincing that defendant discontinued the weekly allowance of $20 for household expenses; that he closed all charge accounts; that he forbade complainant buying anything for herself or the child on defendant's account; that the supply of food and fuel was wholly inadequate; the gas, the only means of heating, was shut off, ostensibly because defendant refused to pay a disputed bill. Complainant repeatedly begged defendant to end this condition of discomfort; she threatened to leave him, and some days before leaving, packed her trunk, without any protest or demand for explanation from him, and to add to complainant's wretchedness during this period, defendant assaulted and choked her and threatened her with bodily harm, and called her vile and indecent names and accused her of unfaithfulness, and this conduct caused her to become afraid of him, so that on January 15th, 1920, she left him and went to her mother's, and on the same day she returned to her husband and asked him to promise to treat her differently, and she and the baby would return to him; this promise he refused to make and the separation then became final.

"For a period of thirteen months, from the date of the separation to February 16th, 1921, the date when the order for temporary alimony was made, defendant refused to contribute anything for the support of either his wife or his child, although requested so to do.

"Defendant has denied every charge and statement of his wife and claims all his troubles are due to the interference of his wife's family in his affairs.

"The proofs do not show any such interference.

"Defendant further claims he has repeatedly made efforts to have his wife return and live with him, and he now professes great affection for his child. His neglect of his child for thirteen months, and his failure to furnish anything for its support during this period, coupled with the fact that he engaged a lawyer to write the only letter he sent to his wife during this time to effect a reconciliation, convince me that this effort, and the subsequent ones made during the pendency of this action, and particularly the one made on the ·eve of the hearing in October, 1921, were neither honest nor sincere, and I am satisfied they were made, most probably, on the suggestion of counsel, for their effect on the final outcome of the case.

"The proofs convincingly establish the charge of the complainant that defendant has abandoned her and their child, and has neglected and refused to support and maintain them; and, as the proofs further establish the ability of the defendant to pay at least $25 weekly for such support, I will accordingly advise a decree to that effect."

*Mr. James P. Mylod*, for the respondent.

*Mr. Merritt Lane*, for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK—13.

*For reversal*—None.